Joseph M. Ramirez, III & Associates
P.O. Box 22264
Chattanooga, TN 37422-2264

02/03/2015

Phillip C. & Nekolia Burke
1860 Richmond Lane
Chattanooga, TN 37421

RE:      1860 Richmond Lane
         1860 Richmond Lane
         Chattanooga, TN 37421-2772
File No.  02032015001
Case No. Burke

Dear Mr. & Mrs. Burke

In accordance with your request, I have personally inspected and prepared an appraisal report of the real
property located at:

                   1860 Richmond Lane, Chattanooga, TN 37421-2772

The purpose of this appraisal is to estimate the market value of the property described in the body of this
appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation
of the property. The methods of approach and reasoning in the valuation of the various physical and
economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of
neighborhood data, led the appraiser to the conclusion that the market value, as of  01/10/2015
is:

                             $        108,000

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this
report.

It has been a pleasure to assist you.  If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature: _____

Joseph M. Ramirez, III

# APPRAISAL REPORT

## OF



1860 Richmond Lane
Chattanooga, TN 37421-2772

# PREPARED FOR

Phillip C. & Nekolia Burke
1860 Richmond Lane
Chattanooga, TN 37421

# AS OF

01/10/2015

# PREPARED BY

Joseph M. Ramirez, III & Associates
P.O. Box 22264
Chattanooga, TN 37422-2264

## INVOICE

Invoice #:
Invoice Date: 02/03/2015
Fee:          0.00
Due Date:     02/04/2015

Lender or Client:                          Borrower:
Phillip C. & Nekolia Burke                 1860 Richmond Lane
1860 Richmond Lane                         1860 Richmond Lane
Chattanooga, TN 37421                      Chattanooga, TN 37421-2772

| Item | | Cost |
|---|---|---|
| 1004 URAR Residential Appraisal | $ | 350.00 |
| - Client paid $350 (as of 01/10/2015) | $ | -350.00 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Total Amount Due: | $ | 0.00 |

Terms:

Please remit payment to:

Joseph M. Ramirez, III
Joseph M. Ramirez, III & Associates
P.O. Box 22264
Chattanooga, TN 37422-2264

File No. 02032015001

**Uniform Residential Appraisal Report**

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address | 1860 Richmond Lane | City | Chattanooga | State | TN | Zip Code | 37421-2772 |
|---|---|---|---|---|---|---|---|

| Borrower | 1860 Richmond Lane | Owner of Public Record | Phillip C. & Nekolia Burke | County | Hamilton |
|---|---|---|---|---|---|

Legal Description Lot #1, Princeton Court Subdivision

| Assessor's Parcel # | 159G A 001.06 | | | Tax Year | 2014 | R.E. Taxes $ | 2,570.08 +/- |
|---|---|---|---|---|---|---|---|

| Neighborhood Name Princeton Court | Map Reference | 04-East Brainerd | Census Tract | 0113.21 |
|---|---|---|---|---|

| Occupant | X | Owner | | Tenant | | Vacant | Special Assessments $ | N/A | | PUD | HOA $ | N/A | | per year | | per month |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Property Rights Appraised | X | Fee Simple | | Leasehold | | Other (describe) | |
|---|---|---|---|---|---|---|

| Assignment Type | | Purchase Transaction | | Refinance Transaction | X | Other (describe) | Federal Bankruptcy Court proceeding |
|---|---|---|---|---|---|---|---|

Lender/Client Phillip C. & Nekolia Burke    Address 1860 Richmond Lane, Chattanooga, TN 37421

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?    Yes  X  No

Report data source(s) used, offerings price(s), and date(s).

I  did  X  did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $  N/A  Date of Contract  N/A  Is the property seller the owner of public record?  X  Yes  No  Data Source(s) CRS

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  Yes  X  No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | | One-Unit Housing Trends | | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Location | Urban | X Suburban | Rural | Property Values | Increasing | X Stable | Declining | PRICE | AGE | One-Unit | 87 % |
| Built-Up | Over 75% X 25-75% | | Under 25% | Demand/Supply | Shortage | X In Balance | Over Supply | $ (000) | (yrs) | 2-4 Unit | 2 % |
| Growth | Rapid | X Stable | Slow | Marketing Time | Under 3 mths | X 3-6 mths | Over 6 mths | 165 Low | New | Multi-Family | 2 % |
| | | | | | | | | 300+ High | 30 | Commercial | 4 % |
| | | | | | | | | 190 Pred. | 15 | Other | 5 % |

Neighborhood Boundaries  The subject property is located to the North by Shallowford Road, East by Jenkins Road, South by East Brainerd Road, and West by Gunbarrel Road and I-75/24.

Neighborhood Description  The general appearance of properties located in the area are "Average" with average appeal to the overall market. The subject property is located in a stable market with stable employment, shopping, schools, recreational facilities, adequate police and fire protection which are all conveniently located near the subject property.

Market Conditions (including support for the above conclusions)  Marketing time is estimated to be 3 to 6 months. Market conditions are deemed to be stable with supply and demand in balance. Financing is available at rates many potential purchasers would consider attractive. By examining recent comparable listings and sales - similar properties in the subject property's market area are included in this appraisal report.

| Dimensions | 100.03x76 | Area | 7,602 Sq. Ft. | Shape | Irregular/Corner | View | Average |
|---|---|---|---|---|---|---|---|

| Specific Zoning Classification | R-1 | Zoning Description R-1, Residential |
|---|---|---|

| Zoning Compliance | X | Legal | | Legal Nonconforming (Grandfathered Use) | | No Zoning | | Illegal (describe) |
|---|---|---|---|---|---|---|---|---|

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  X  Yes  No  If No, describe.  The highest and best use for the subject property's neighborhood is single family dwellings.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements–Type | | Public | Private |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street | Asphalt | | X | |
| Gas | X | | Sanitary Sewer | X | | Alley | N/A | | |

| FEMA Special Flood Hazard Area | | Yes | X | No  FEMA Flood Zone X500 | FEMA Map # 47065C0369F | FEMA Map Date 11/07/2002 |
|---|---|---|---|---|---|---|

Are the utilities and/or off-site improvements typical for the market area?  X  Yes  No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  Yes  X  No  If Yes, describe.

There are currently no known adverse environmental conditions, encroachments, nor special assessments that would adversely affect the subject property. Please refer to the environmental addendum contained in this report for further information.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units | X One | One with Accessory Unit | X Concrete Slab | Crawl Space | Foundation Walls | Block/Brick/Average | Floors | HW/Carpet/Tile/Average |
| # of Stories 1.5 | | Full Basement | Partial Basement | Exterior Walls | Siding/Brick/Good | Walls | Sheetrock/Average |
| Type X Det. | Att. | S-Det./End Unit | Basement Area | 0 sq. ft. | Roof Surface | Shingle/Average | Trim/Finish Wood/Average |
| X Existing | Proposed | Under Const. | Basement Finish | 0 % | Gutters & Downspouts Aluminum/Average | Bath Floor Tile/Average |
| Design (Style) 1.5-Story | | Outside Entry/Exit | Sump Pump | Window Type | Aluminum/Average | Bath Wainscot Fiberglass/Average |
| Year Built 1999 | | Evidence of | Infestation | Storm Sash/Insulated Yes/Average | Car Storage | None |
| Effective Age (Yrs) 16 | | Dampness | Settlement | Screens | Yes/Average | X Driveway # of Cars 2 |
| Attic | None | Heating X FWA | HWBB Radiant | Amenities | Woodstove(s) # | Driveway Surface Concrete |
| X Drop Stair | Stairs | Other | Fuel Electric/Gas | X Fireplace(s) # | X Fence | X Garage # of Cars 2 |
| X Floor | Scuttle | Cooling X Central Air Conditioning | X Patio/Deck | X Porch Screen | Carport # of Cars |
| Finished | Heated | Individual | Other | Pool | X Other Alarm | X Att. Det. Built-in |

Appliances X Refrigerator X Range/Oven X Dishwasher X Disposal X Microwave P Washer/Dryer X Other (describe) Fan-Hood

Finished area **above** grade contains:  6 Rooms  3 Bedrooms  2/1 Bath(s)  2,048 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)  The subject property is typical of the area in regard to size, style, and age.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.)  At the time of inspection, the subject property was estimated to be in need of major repairs. The appraiser consulted home owner that a licensed contractor should be contacted for professional estimate concerning roof damage, interior water damage in rafters and eaves. Water damage has moved into the second floor area (master bedroom). This should be considered extensive water damage which currently need immediate attention. A copy of Schmitt Construction's repair estimate is included in this report. The total estimated amount of repairs is calculated at $62,810 (rounded to $63,000).

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  X  Yes  No  If Yes, describe

See repair estimates included in this appraisal report for further information.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  X  Yes  No  If No, describe  See Environmental Addendum contained in this report for further information.

Joseph M. Ramirez, III & Associates

Case 1:15-bk-10724-NWW    Doc 30-2    Filed 05/27/15    Entered 05/27/15 15:22:28    Desc
Uniform Residential Appraisal Report    File No 02032015001    Page 2 of 32

| FEATURE | SUBJECT | COMPARABLE SALE #1 | | COMPARABLE SALE #2 | | COMPARABLE SALE #3 | |
|---|---|---|---|---|---|---|---|
| There are | 10 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | | 165,000 | to $ | 250,000+ | |
| There are | 10 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | | 165,000 | to $ | 250,000+ | |
| Address | 1860 Richmond Lane | 1830 Richmond Lane | | 2623 Churchill Downs Circle | | 8949 Fuller Road | |
| | Chattanooga, TN 37421-2772 | Chattanooga, TN 37421 | | Chattanooga, TN 37421 | | Chattanooga, TN 37421 | |
| Proximity to Subject | | 0.02 miles SW | | 2.81 miles N | | 1.99 miles SE | |
| Sale Price | $ N/A | $ | 199,900 | $ | 170,000 | $ | 176,850 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 83.22 sq. ft. | | $ 83.37 sq. ft. | | $ 66.86 sq. ft. | |
| Data Source(s) | MLS, CRS | MLS # 1204088 | | MLS # 1209971 | | MLS # 1204438 | |
| Verification Source(s) | Personal Inspection | CRS, MLS Data Sources | | CRS, MLS Data Sources | | CRS, MLS Data Sources | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Other | | Other/REO | | Other | |
| Concessions | | None Known | | None Known | | None Known | |
| Date of Sale/Time | | 12/12/2014 | | 09/22/2014 | | 05/09/2014 | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 7,602 Sq. Ft. | 8,552 Sq. Ft. +/- | | 18,633 Sq. Ft. +/- | -5,000 | 9,886 Sq. Ft. +/- | |
| View | Average | Average | | Average | | Average | |
| Design (Style) | 1.5-Story | 1.5-Story | | 1.5-Story | | 1.5-Story | |
| Quality of Construction | Siding/Brick | Siding/Brick | | Siding/Brick | | Siding/Brick | |
| Actual Age | 16 | 14 | | 18 | | 12 | |
| Condition | Cost of Repairs | Average | -63,000 | Average | -63,000 | Average | -63,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6 3 2/1 | 7 3 2/1 | | 6 3 2/2 | -2,500 | 7 5 3/1 | -5,000 |
| Gross Living Area | 2,048 sq. ft. | 2,402 sq. ft. | -17,700 | 2,039 sq. ft. | +450 | 2,645 sq. ft. | -29,850 |
| Basement & Finished | Slab | Slab | | Crawl | | Crawl | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | CH&A/Gas/Average | CH&A/Gas/Average | | CH&A/Gas/Average | | CH&A/Average | |
| Energy Efficient Items | Average | Average | | Average | | Average | |
| Garage/Carport | G2A | G2A | | G2A | | G2A | |
| Porch/Patio/Deck | Porch/Patio/Deck | Porch/Patio/Deck | | Porch/Patio/Deck | | Porch/Patio/Deck | |
| Fireplace | FP-1 | FP-1 | | FP-1 | | FP-1 | |
| Other Amenities | Alarm | Alarm | | Sun Room | -5,000 | None | +1,000 |
| | Fence | None | +3,000 | None | +3,000 | Fence | |
| Net Adjustment (Total) | | + X - | $ -77,700 | + X - | $ -72,050 | + X - | $ -96,850 |
| Adjusted Sale Price | | Net Adj: -39% | | Net Adj: -42% | | Net Adj: -55% | |
| of Comparables | | Gross Adj : 42% | $ 122,200 | Gross Adj: 46% | $ 97,950 | Gross Adj: 56% | $ 80,000 |

I X did | did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research | did X | did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)

My research X did | did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No Prior Sales in Past 36 Months | No Prior Sales in Past 36 Months | 03/26/2013 / 02/26/2013 | 04/16/2014 / 04/30/2012 |
| Price of Prior Sale/Transfer | N/A | N/A | $253,147 / $253,147 | $1 Quitclaim / $120,000 |
| Data Source(s) | CRS | CRS, MLS | CRS, MLS | CRS, MLS |
| Effective Date of Data Source(s) | 01/10/2015 | 01/10/2015, DOM - 370 | 01/10/2015, DOM - 128 | 01/10/2015, DOM - 141 |

Analysis of prior sale or transfer history of the subject property and comparable sales  Per CRS data records, the subject property last sold on 09/14/2001 in the
amount(s) of $162,770.

Summary of Sales Comparison Approach    The appraiser researched current comparable sales from the Chattanooga MLS data system within the past
year.  The comparable sales contained in this appraisal report were the best available from the subject property's age range, square footage, quality
of construction, and design. The subject property is currently in need of major deferred maintenance which includes roof, water damage/mold. Due
to the subject property's current condition, the necessary repairs will have a negative impact on the market price.  Comparable Sale 1 is the strongest
sale contained in this appraisal report due to being located on the same street as the subject property. Comp 1 has approximately 400 sf in GLA than
the subject property.  All comparable sales are located within 3 miles of the subject property in the East Brainerd area.

Indicated Value by Sales Comparison Approach $    108,000
Indicated Value by: Sales Comparison Approach $    108,000    Cost Approach (if developed) $    131,196    Income Approach (if developed) $    N/A

The sales comparison approach was given the greatest consideration.  The cost approach was developed.  The income approach was deemed N/A
due to lack of income comparables.  Marketing and exposure time were estimated to range between 3 to 6 months.  The subject property was
appraised in "As-Is" condition. The subject property has extensive roof, water damage/mold in the upper floor/roof area in master bedroom.
This appraisal is made X "as is," | subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, | subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or | subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  "As-Is" price in the subject
property's current condition is estimated to be $108,000. "As-Repaired" price is estimated to be $171,000.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$    108,000 , as of    01/10/2015    , which is the date of inspection and the effective date of this appraisal.

Joseph M. Ramirez, III & Associates

Case 1:15-bk-10724-NWW   Doc 30-2   Filed 05/27/15   Entered 05/27/15 15:22:28   Desc
Uniform Exhibit Residential Page 6 of 32 Report

The client is Phillip and Nekolia Burke. The purpose of this appraisal report is to estimate current market value for an individual client for federal bankruptcy court purposes. The intended user of this report is Federal Bankruptcy Court and is not to be used for any other purposes.

Scope of Work: Under scope of work, the appraiser researched all available MLS data and reviewed public CRS records. The appraiser informed the owner that a licensed professional contractor should be consulted to assist in determining the estimated cost of repairs that are currently needed on the subject property as referenced in this appraisal report.

The subject property currently has evidence of a mold problem due to water penetration in the master bedroom area and in the upper level area. Mold is considered to be a safety hazard to occupants and mold treatment/repair should be performed immediately to prevent further damage to the subject property and inhabitants. Further information concerning this issue is contained in the contractor's estimate which is included in this appraisal report.

**ADDITIONAL COMMENTS**

## COST APPROACH TO VALUE (not required by Fannie Mae.)

Provide adequate information for the lender/client to replicate your cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED | REPRODUCTION OR | X REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | =$ | 25,000 |
|---|---|---|---|---|---|---|---|---|
| Source of cost data  Marshall & Swift Cost Handbook | | | Dwelling | 2,048 | Sq. Ft. @ $ | 78.50 | =$ | 160,768 |
| Quality rating from cost service    Average    Effective date of cost data    2011 | | | | | Sq. Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | Porch/Patio/Deck/KBls/Appliances/FP/Alarm/JTub/Fence | | | | | 27,000 |
| Replacement cost source is from the National Building Cost Manual, | | | Garage/Carport | 400 | Sq. Ft. @ $ | 33.75 | =$ | 13,500 |
| Marshall & Swift Cost Services, and local building trends.  The site value | | | Total Estimate of Cost-new | | | | =$ | 201,268 |
| estimated is based on the analysis of site sales.  The physical | | | Less | Physical  21 | Functional 39.5 | External | | |
| depreciation is computed by a modified age life method. | | | Depreciation  42,266 | 62,806 | 0 | =$ ( | 105,072 | ) |
| | | | Depreciated Cost of Improvements | | | | =$ | 96,196 |
| Age/Life Method of Depreciation is 16/75 = 21.3%. | | | "As-is" Value of Site Improvements | | | | =$ | 10,000 |
| Estimated Remaining Economic Life (HUD and VA only)  59  Years | | | Indicated Value By Cost Approach | | | | =$ | 131,196 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae.)

| Estimated Monthly Market Rent $ | N/A | X Gross Multiplier | N/A | =$ | N/A | Indicated Value by Income Approach |
|---|---|---|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)  N/A

## PROJECT INFORMATION FOR PUDs (If applicable)

Is the developer/builder in control of the Homeowner's Association (HOA)?  ☐ Yes  ☐ No  Unit type(s)  ☐ Detached  ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project  N/A

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data source.
Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowner's Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

File No.  02032015001
Case No.  Burke

| Borrower | 1860 Richmond Lane | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1860 Richmond Lane | | | | | | |
| City | Chattanooga | County | Hamilton | State | TN | Zip Code | 37421-2772 |
| Lender/Client | Phillip C. & Nekolia Burke | | Address | 1860 Richmond Lane, Chattanooga, TN 37421 | | | |

| FEATURE | SUBJECT | COMPARABLE SALE # | 4 | COMPARABLE SALE # | 5 | COMPARABLE SALE # | 6 |
|---|---|---|---|---|---|---|---|
| Address | 1860 Richmond Lane | 2244 Red Tail Lane | | 8726 Gable Ridge Lane | | | |
| | Chattanooga, TN 37421-2772 | Chattanooga, TN 37421 | | Chattanooga, TN 37421 | | | |
| Proximity to Subject | | 1.39 miles NE | | 2.46 miles E | | | |
| Sale Price | $         N/A | $         185,000 | | $         189,900 | | $ | |
| Sale Price/Gross Liv. Area | $   0.00   sq. ft. | $   90.51   sq. ft. | | $   90.43   sq. ft. | | $       sq. ft. | |
| Data Source(s) | MLS, CRS | MLS # 1217908 | | MLS # 1186272 | | | |
| Verification Source(s) | Personal Inspection | MLS/CRS Property Data | | MLS/CRS Property Data | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Other | | Other | | | |
| Concessions | | None Known | | None Known | | | |
| Date of Sale/Time | | 12/05/2014 | | 12/22/2014 | | | |
| Location | Average | Average | | Average | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 7,602 Sq. Ft. | 9,285 Sq. Ft. +/- | | 22,018 Sq. Ft. +/- | -7,500 | | |
| View | Average | Average | | Average | | | |
| Design (Style) | 1.5-Story | 1.5-Story | | 1.5-Story | | | |
| Quality of Construction | Siding/Brick | BV/Siding | | BV/Siding | | | |
| Actual Age | 16 | 11 | | 13 | | | |
| Condition | Cost of Repairs | Average | -63,000 | Average | -63,000 | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6    3    2/1 | 6    4    3/0 | -2,500 | 7    3    2/0 | +2,500 | | |
| Gross Living Area | 2,048   sq. ft. | 2,044   sq. ft. | +200 | 2,100   sq. ft. | -2,600 | sq. ft. | |
| Basement & Finished | Slab | Slab | | Crawl | | | |
| Rooms Below Grade | None | None | | None | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | CH&A/Gas/Average | CH&A/Gas/Average | | CH&A/Gas/Average | | | |
| Energy Efficient Items | Average | Average | | Average | | | |
| Garage/Carport | G2A | G2A | | G2A | | | |
| Porch/Patio/Deck | Porch/Patio/Deck | Porch/Patio/Deck | | Porch/Patio/Deck | | | |
| Fireplace | FP-1 | FP-1 | | FP-1 | | | |
| Other Amenities | Alarm | Alarm | | Alarm | | | |
| | Fence | Fence | | None | +3,000 | | |
| Net Adjustment (Total) | | + [X] - | $   -65,300 | + [X] - | $   -67,600 | + [ ] - | $          0 |
| Adjusted Sale Price | | Net Adj: -35% | | Net Adj: -36% | | Net Adj: 0% | |
| of Comparables | | Gross Adj : 36% | $   119,700 | Gross Adj: 41% | $   122,300 | Gross Adj: 0% | $          0 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE #   4 | COMPARABLE SALE #   5 | COMPARABLE SALE #   6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No Prior Sales in Past 36 Months | No Prior Sales in Past 36 Months | No Prior Sales in Past 36 Months | |
| Price of Prior Sale/Transfer | N/A | N/A | N/A | |
| Data Source(s) | CRS | CRS, MLS | CRS, MLS | |
| Effective Date of Data Source(s) | 01/10/2015 | 01/10/2015, DOM - 60 | 01/10/2015, DOM - 515 | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Joseph M. Ramirez, III & Associates                    File No.  02032015001

**Uniform Residential Appraisal Report**                    Case No. 92176

## APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Freddie Mac Form 70  March 2005

Produced by ClickFORMS Software 800-622-8727

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Joseph M. Ramirez III_ | Signature _____ |
| Name     Joseph M. Ramirez, III | Name _____ |
| Company Name   Joseph M. Ramirez, III & Associates | Company Name _____ |
| Company Address     P.O. Box 22264 | Company Address _____ |
|           Chattanooga, TN 37422-2264 | |
| Telephone Number     423-704-6017 | Telephone Number _____ |
| Email Address     jmr3appraiser@aol.com | Email Address _____ |
| Date of Signature and Report     02/03/2015 | Date of Signature _____ |
| Effective Date of Appraisal     01/10/2015 | State Certification # _____ |
| State Certification # _____ | or State License # _____ |
| or State License #     CR-00001848 | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State    TN | |
| Expiration Date of Certification or License     06/01/2015 | **SUBJECT PROPERTY** |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
|           1860 Richmond Lane | ☐ Did inspect exterior of subject property from street |
|           Chattanooga, TN 37421-2772 | Date of Inspection _____ |
| APPRAISED VALUE OF SUBJECT PROPERTY $   108,000 | ☐ Did inspect interior and exterior of subject property |
| LENDER/CLIENT | Date of Inspection _____ |
| Name _____ | |
| Company Name     Phillip C. & Nekolia Burke | **COMPARABLE SALES** |
| Company Address     1860 Richmond Lane | ☐ Did not inspect exterior of comparable sales from street |
|           Chattanooga, TN 37421 | ☐ Did inspect exterior of comparable sales from street |
| Email Address _____ | Date of Inspection _____ |

Borrower   1860 Richmond Lane

Property Address   1860 Richmond Lane

| City | Chattanooga | County | | Hamilton | | State | TN | Zip Code | 37421-2772 |

Lender/Client   Phillip C. & Nekolia Burke     Address   1860 Richmond Lane, Chattanooga, TN 37421



Comments:

### AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|------|-------------|----------|------------|
| GLA1 | First Floor | 1313.0 | |
| | 1/2 Story | 539.3 | |
| | 1/2 Story | 195.5 | 2047.8 |
| GAR | Attached Garage | 400.0 | 400.0 |
| P/P | Screen Porch/Deck | 336.0 | |
| | Porch | 40.0 | 376.0 |

### LIVING AREA BREAKDOWN

| | Breakdown | | Subtotals |
|--|-----------|--|-----------|
| First Floor | | | |
| | 25.0 x | 43.0 | 1075.0 |
| | 1.5 x | 13.0 | 19.5 |
| | 9.5 x | 23.0 | 218.5 |
| 1/2 Story | | | |
| | 30.5 x | 1.0 | 30.5 |
| | 41.5 x | 8.0 | 332.0 |
| | 1.0 x | 20.0 | 20.0 |
| | 1.0 x | 32.5 | 32.5 |
| | 3.0 x | 5.0 | 15.0 |
| | 6.0 x | 6.0 | 36.0 |
| | 7.0 x | 6.0 | 42.0 |
| | 2.5 x | 12.5 | 31.3 |
| | 17.0 x | 11.5 | 195.5 |

Net LIVABLE Area     (rounded)     2048     12 Items     (rounded)     2048

| Client: | Phillip C. & Nekolia Burke | Client File #: | Burke |
| Subject Property: | 1860 Richmond Lane | Appraisal File #: | 02032015001 |



**FRONT OF
SUBJECT PROPERTY**
1860 Richmond Lane
Chattanooga, TN 37421-2772



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

| Client: | Phillip C. & Nekolia Burke | Client File #: | Burke |
|---|---|---|---|
| Subject Property: | 1860 Richmond Lane | Appraisal File #: | 02032015001 |



**Exterior Roof Area**
Water damage, shingles missing.



**Exterior Roof Area**
Water damage, missing shingles.



**Exterior Eave Area**
Water damage.

| Client: | Phillip C. & Nekolia Burke | Client File #: | Burke |
| Subject Property: | 1860 Richmond Lane | Appraisal File #: | 02032015001 |



Exterior Eave Area
Rotten wood from water damage.



Left-Side Exterior Side Area



Rear Yard Area / Utility Shed

| Client: | Phillip C. & Nekolia Burke | Client File #: | Burke |
|---|---|---|---|
| Subject Property: | 1860 Richmond Lane | Appraisal File #: | 02032015001 |



Screen Porch Area
Screens are damaged.



Rear Exterior Eave Area
Water damage.



Exterior Roof Area
Missing shingles/water penetration.

| Client: | Phillip C. & Nekolia Burke | Client File #: | Burke |
| Subject Property: | 1860 Richmond Lane | Appraisal File #: | 02032015001 |



Kitchen Area



Bedroom Area



Master Bedroom Ceiling Area
Mold penetrating ceiling/water damage.

| Client: | Phillip C. & Nekolia Burke | Exhibit    Page 17 of 32 | Client File #: | Burke |
|---------|---------------------------|--------------------------|----------------|-------|
| Subject Property: | 1860 Richmond Lane |                | Appraisal File #: | 02032015001 |



Master Bath Area



Garage Area



Stairway Area

Joseph M. Ramirez, III & Associates

| Client: | Phillip C. & Nekolia Burke | Client File #: | Burke |
|---|---|---|---|
| Subject Property: | 1860 Richmond Lane | Appraisal File #: | 02032015001 |



Bedroom Area



Bedroom Area



Bonus Room Area

| Client: | Phillip C. & Nekolia Burke | Client File #: | Burke |
|---|---|---|---|
| Subject Property: | 1860 Richmond Lane | Appraisal File #: | 02032015001 |



Laundry Area

| Client: | Phillip C. & Nekolia Burke | Client File #: | Burke |
|---|---|---|---|
| Subject Property: | 1860 Richmond Lane | Appraisal File #: | 02032015001 |



**COMPARABLE SALE #**    1
1830 Richmond Lane
Chattanooga, TN 37421



**COMPARABLE SALE #**    2
2623 Churchill Downs Circle
Chattanooga, TN 37421



**COMPARABLE SALE #**    3
8949 Fuller Road
Chattanooga, TN 37421

| Client: | Phillip C. & Nekolia Burke | Client File #: | Burke |
|---|---|---|---|
| Subject Property: | 1860 Richmond Lane | Appraisal File #: | 02032015001 |



**COMPARABLE SALE #**   4
2244 Red Tail Lane
Chattanooga, TN 37421



**COMPARABLE SALE #**   5
8726 Gable Ridge Lane
Chattanooga, TN 37421

**COMPARABLE SALE #**   6



**Schmitt Construction, LLC**

schmittcompany@aol.com

| | | |
|---|---|---|
| Client: | Philip and Nekolia Burke | |
| Property: | 1860 Richmond Lane | |
| | Chattanooga, TN 37421 | |
| Operator Info: | Schmitt Construction, LLC | |
| Operator: | TN License 27970 | |
| Estimator: | | |
| Type of Estimate: | Repairs/Restoration | |
| Date Entered: | 1/12/2015 | Date Assigned: |
| Date Est. Completed: | 45-60 day | Date Job Completed: |
| | | |
| Price List: | CABA5B_JAN15 | |
| | Restoration/Service/Repair | |
| Estimate: | 1-12-15 | |
| File Number: | Burke1860 | |

Schmitt Construction appreciates the opportunity to provide you with the scope of work and cost estimate for your project. This report is based on our consultants visual inspection of December, 11 2014 and is provided for informational purposes and is not a contract to perform repairs to this property. By definition an estimate is a statement of the approximate cost of work to be done. Every effort is made to make the costs and scope of work as accurate as possible. The property owner will ultimately be responsible for entering into an agreement with a contractor of their choice and for ensuring that the repairs are done to their satisfaction. This report does not guarantee that further latent damages maybe discovered during the course of construction. The following qualifications and exclusions would apply.
**Qualifications:**

1- All work is assumed to be performed during normal business hours.
2- Contractor shall be allowed to use the building power and water during construction.
3- The quality of all new building materials shall be equal to the quality of existing materials.
4- All finishes matching existing as close a a possible.
5- Current prevailing wages do not apply for this project.

**Exclusions:**

1- Structural repairs or code upgrades.
2- Architect and Engineering fees.
3- Concrete repairs.
4- Permit fees.
5- Hazardous materials testing and/or handling of any kind.



Schmitt Construction, LLC
schmittcompany u aol com

| DESCRIPTION | Qnty | Rate | Amount |
|---|---|---|---|
| 1860 Richmond: Roofing Remove R Replace | | | |
| Remove Laminated-comp-shingle-rfg-w/felt | 46.53 SQ | $50.00 | $2,326.50 |
| GAF Timberline HD Lifetime Arch. shingle rfg-w/felt Roof will require 15% waste factor | 53.67 SQ | $150.22 | $8,062.31 |
| Ridge cap-High profile-Arch. Shingle | 311..66 LF | $4.55 | $1,418.05 |
| R & R flashing 14" wide | 133.20 LF | $2.69 | $358.31 |
| R &R Continuous ridge vent-shingle over style | 155.59 LF | $6.28 | $977.11 |
| Drip Edge | 450.00 LF | $1.30 | $585.00 |
| Roof Vents metal color weathered wood | 10 EA | $42.07 | $420.70 |
| Remove Additional charge for steep roof 10/12-12/12 slope | 46.53 SQ | $15.40 | $716.56 |
| Additional charge for steep roof- 10/12-12/12 slope | 46.53 SQ | $30.46 | $1,417.30 |
| Remove Additional charge for high roof (2 stories or greater) | 33.25 SQ | $3.71 | $123.36 |
| Additional charge for high roof (2 stories or greater) | 33.25 SQ | $8.56 | $284.62 |
| R & R Flashing -pipe jack | 2.00 EA | $25.14 | $50.28 |
| Fall protection harness & lanyard-per day 5 harness for 3 days | 15 DA | $6.00 | $90.00 |
| Removal all debris, nail sweep, clean work site, disposal fee | | | $375.00 |
| Dwelling Totals: | | | $17,205.10 |
| Line item Total | | | $17,205.10 |
| Material Sales Tax | 9.25% | $7,701.90 | $712.42 |
| Total | | | $17,917.52 |

GAF Timberline HD Lifetime Architectural roofing shingles-Weathered Wood color.
GAF Systems Plus Warranty (50 yr. Mfg. Material, 25 yr. Mfg. Defects, 10 yr. Workmanship)

2



**Schmitt Construction, LLC**
schmittcompany @ aol.com

| DESCRIPTION | |
|---|---|
| 1860 Richmond: Exterior Repairs | |
| Remove and replace deteriorated rafters adjacent to foyer on exterior 2nd story wall and valley located above upstairs hallway and bonus room | $1,418.05 |
| Remove and replace deteriorated EFIS "STO" on foyer exterior 2nd story wall above upstairs bath and bonus room. | $2,326.50 |
| Remove and replace deteriorated OSB plywood installed behind EFIS "STO" exterior | $700.00 |
| Remove and replace deteriorated soffits at front and sides of home | $1,200.05 |
| Remove and replace deteriorated fascia boards at front and sides of home | $628.31 |
| Remove and replace deteriorated Masonite siding at rear of home adjacent M. Bedroom | $570.00 |
| Gutters removed and replaced at soffit repair areas as required | $580.00 |
| All areas replaced to have 1 primer coat and 2 finish coats Ben Moore exterior acrylic paint | $1,970.00 |
| Dwelling Totals: | $9,392.91 |
| Line Item Total | $9,392.91 |
| Material Sales Tax | Included |
| Total | $9,392.91 |

3

 **Schmitt Construction, LLC**
schmittcompany@aol.com

| DESCRIPTION | |
|---|---|
| DWELLING: Second Floor Repairs | |
| Remove and replace deteriorated ceiling joists above bath, hallway and bonus area. | $800.00 |
| Remove and replace wet or damaged insulation | $450.00 |
| Remove and replace damaged sheetrock at walls and ceilings in hallway, bath, bedroom #2 and bonus area.  Sheetrock replaced with water resistant type | $6,345.00 |
| Remove and replace deteriorated or warped wall framing in hallway, bath, bedroom #2 and bonus area. | $795.00 |
| Remove and replace deteriorated subflooring material in hallway, bath, bedroom #2 and bonus area. | $730.00 |
| Remove and replace deteriorated baseboards, door trim, and crown moldings in hallway, bath, bedroom #2 and bonus area. | $1,470.00 |
| Remove and reinstall vanity light fixture, light fixtures in bathroom, hallway and bedroom. | $260.00 |
| Remove and reinstall existing vanity in bathroom | $410.00 |
| Remove and reinstall vanity faucet in bathroom | $150.00 |
| Remove and reinstall vanity mirror in bathroom | $30.00 |
| All work areas sealed off from finished areas of the home | $300.00 |
| Negative air fans to be used during all remediation work | $270.00 |
| Dehumidifiers used to expedite drying after sheetrock removed to completely dry all areas | $150.00 |
| All affected areas to be treated with Borate (colorless, odorless non-corrosive, non-toxic), supplemented with a mold control agent to kill molds, bacteria, and wood decay fungi. | $1,200.00 |
| Bathroom exhaust vent replaced with Broan #1791LED 200 CFM exhausted to outside of home using 4 inch solid vent pipe | $350.00 |
| All areas repaired or replaced will have 1 primer coat and 2 finish coats Ben Moore interior flat or satin finish. | $2,870.00 |
| Remove and replace damaged carpet and padding in hallway, bedroom #2 and bonus area. | $2,250.00 |
| Dwelling Totals: | |
| | **$18,830.00** |
| Line Item Total | $18,830.00 |
| Material Sales Tax | Included |
| **Total** | **$18,830.00** |

4



**Schmitt Construction, LLC**

schmittcompany@aol.com

| DESCRIPTION | |
|---|---|
| 1860 Richmond: First Floor Interior Repairs | |
| Remove and replace deteriorated ceiling joists above master bedroom, master bath, master closet and hallway. | $600.00 |
| Remove and replace wet or damaged insulation in master bedroom, master bath, master closet and hallway. | $550.00 |
| Remove and replace damaged sheetrock on walls and ceilings in master bedroom, master bath, master closet and hallway. | $4,620.00 |
| Remove and replace deteriorate wood beams on master bedroom ceiling | $875.00 |
| Remove and replace deteriorated baseboards, door trim, and crown moldings in master bedroom, master bath, master closet and hallway. | $1230.00 |
| Remove and reinstall existing vanities and vanity mirrors in master bathroom. | $410.00 |
| Plumber's material and labor to remove and reinstall vanity faucets in bathroom. | $325.00 |
| Electrician material and labor to remove and reinstall vanity light fixtures, master bedroom light and fan . | $250.00 |
| Electrician material and labor to remove and reinstall master closet light fixtures | $75.00 |
| All work areas sealed off from finished areas of the home | $400.00 |
| Negative air fans to be used during all remediation work | $220.00 |
| Dehumidifiers used to expedite drying after sheetrock removed to completely dry all areas | $125.00 |
| All affected areas to be treated with Borate (colorless, odorless non-corrosive and non-toxic) Supplemented with a mold control agent to kill molds, bacteria, and wood decay fungi. | $1,200.00 |
| Bathroom exhaust vent replaced with Broan #1791LED 200 CFM exhausted to outside of home using 4 inch solid vent pipe | $275.00 |
| All areas repaired or replaced will have 1 primer coat and 2 finish coats Ben Moore interior flat or satin finish. | $3,530.00 |
| Remove and replace damaged carpet and padding in master bedroom and master closet | $1,860.00 |
| Install Rosette and re-install handrail at stairway | $125 |
| **Dwelling Totals:** | **$16,670.00** |
| | |
| Line Item Total | $16,670.00 |
| Material Sales Tax | Included |
| **Total** | **$16,670.00** |

5

Joseph M. Ramirez, III & Associates

Case 1:15-bk-10724-NWW   Doc 30-2   Filed 05/27/15   Entered 05/27/15 15:22:28   Desc
LOCATION MAP APPENDIUM                    Case No.  Burke
                Exhibit   Page 27 of 32

| Borrower | 1860 Richmond Lane | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1860 Richmond Lane | | | | | | |
| City Chattanooga | | County | Hamilton | State | TN | Zip Code | 37421-2772 |
| Lender/Client | Phillip C. & Nekolia Burke | | Address | 1860 Richmond Lane, Chattanooga, TN 37421 | | | |



SUBJECT
UBDIVISIØN
1 59 AC
1.39 ACc
"C"
"A"
12
11
10
14
15
16
2
6
7
8
5
B
65
I-222

Borrower      1860 Richmond Lane

| Property Address | 1860 Richmond Lane | | | | | | |
|---|---|---|---|---|---|---|---|
| City  Chattanooga | | County | Hamilton | State | TN | Zip Code | 37421-2772 |
| Lender/Client  Phillip C. & Nekolia Burke | | | Address  1860 Richmond Lane, Chattanooga, TN 37421 | | | | |



**Flood Map Legends**

**Flood Zones**

Areas inundated by 500-year flooding

Areas outside of the 100 and 500 year flood plains

Areas inundated by 100-year flooding

Areas inundated by 100-year flooding with velocity hazard

Floodway areas

Floodway areas with velocity hazard

Areas of undetermined but possible flood hazard

Areas not mapped on any published FIRM

**Flood Zone Determination**

SFHA (Flood Zone): **Out**
Within 250 ft. of multiple flood zones? **Yes**
Community: **470072**
Community Name: **CHATTANOOGA, CITY OF**
Zone: **X500** Panel: **470072 0369F**     Panel Date: **11/07/2002**
  FIPS Code: **47065**   Census Tract: **0113.21**

This Report is for the sole benefit of the Customer that ordered and paid for the Report and is based on the property information provided by that Customer. That Customer's use of this Report is subject to the terms agreed to by that Customer when accessing this product. No third party is authorized to use or rely on this Report for any purpose. THE SELLER OF THIS REPORT MAKES NO REPRESENTATIONS OR WARRANTIES TO ANY PARTY CONCERNING THE CONTENT ACCURACY OR COMPLETENESS OF THIS REPORT INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. The seller of this Report shall not have any liability to any third party for any use or misuse of this Report.

Borrower 1860 Richmond Lane
Property Address 1860 Richmond Lane

| City Chattanooga | County | Hamilton | State | TN | Zip Code | 37421-2772 |

Lender Phillip C. & Nekolia Burke    Address 1860 Richmond Lane, Chattanooga, TN 37421

## APPARENT* HAZARDOUS SUBSTANCES AND/OR DETRIMENTAL ENVIRONMENTAL CONDITIONS

\* APPARENT is defined as that which is visible, obvious, evident or manifest to the appraiser.

*This universal Environmental Addendum is for use with any real estate appraisal. Only the statements which have been checked by the appraiser apply to the property being appraised.*

This addendum reports the results of the appraiser's routine inspection of and inquiries about the subject property and its surrounding area. It also states what assumptions were made about the existence (or nonexistence) of any hazardous substances and/or detrimental environmental conditions. THE APPRAISER IS NOT AN ENVIRONMENTAL INSPECTOR and therefor might be unaware of existing hazardous substances and/or detrimental environmental conditions which may have a negative effect on the safety and value of the property. It is possible that tests and inspections made by a qualified environmental inspector would reveal the existence of hazardous materials and/or detrimental environmental conditions on or around the property that would negatively affect its safety and value.

### DRINKING WATER

[X] Drinking Water is supplied to the subject from a municipal water supply which is considered safe. However the only way to be absolutely certain that the water meets published standards is to have it tested at all discharge points.

[ ] Drinking Water is supplied by a well or other non-municipal source. It is recommended that tests be made to be certain that the property is supplied with adequate pure water.

[X] Lead can get into drinking water from its source, the pipes, or at all discharge points, plumbing fixtures and/or appliances. The only way to be certain that water does not contain an unacceptable lead level is to have it tested at all discharge points.

[X] The value estimated in this appraisal is based on the assumption that there is an adequate supply of safe, lead-free Drinking Water.

Comments

### SANITARY WASTE DISPOSAL

[X] Sanitary Waste is removed from the property by a municipal sewer system.

[ ] Sanitary Waste is disposed of by a septic system or other sanitary on-site waste disposal system. The only way to determine that the disposal system is adequate and in good working condition is to have it inspected by a qualified inspector.

[X] The value estimated in this appraisal is based on the assumption that the Sanitary Waste is disposed of by a municipal sewer or an adequate properly permitted alternate treatment system in good condition.

Comments

### SOIL CONTAMINANTS

[X] There are no apparent signs of Soil Contaminants on or near the the subject property (except as reported in Comments below). It is possible that research, inspection and testing by a qualified environmental inspector would reveal existing and/or potential hazardous substances and/or detrimental environmental conditions on or around the property that would negatively affect its safety and value.

[X] The value estimated in this appraisal is based on the assumption that the subject property is free of Soil Contaminants.

Comments

### ASBESTOS

[ ] All or part of the improvements were constructed before 1979 when Asbestos was a common building material. The only way to be certain that the property is free of friable and non-friable Asbestos is to have it inspected and tested by a qualified asbestos inspector.

[X] The improvements were constructed after 1979. No apparent friable Asbestos was observed (except as reported in Comments below).

[X] The value estimated in this appraisal is based on the assumption that there in no uncontained friable Asbestos or other hazardous Asbestos material on the property.

Comments

### PCBs (POLYCHLORINATED BIPHENYLS)

[X] There were no apparent leaking fluorescent light ballasts, capacitors or transformers anywhere on or nearby the property (except as reported in Comments below).

[X] There was no apparent visible or documented evidence known to the appraiser of soil or groundwater contamination from PCBs anywhere on the property (except as reported in Comments below).

[X] The value estimated in this appraisal is based on the assumption that there are no uncontained PCBs on or nearby the property.

Comments

### RADON

[X] The appraiser is not aware of any Radon tests made on the subject property within the past 12 months (except as reported in Comments below).

[X] The appraiser is not aware of any indication that the local water supplies have been found to have elevated levels of Radon or Radium.

[X] The appraiser is not aware of any nearby properties (except as reported in Comments below) that were or currently are used for uranium, thorium or radium extraction or phosphate processing.

[X] The value estimated in this appraisal is based on the assumption that the Radon level is at or below EPA recommended levels

Comments

| X | There is no apparent visible or documented evidence of the past or present operation of any USTs on the property nor any know historical use of the property that would likely have had USTs. |
| X | There are no apparent petroleum storage and/or delivery facilities (including gasoline stations or chemical manufacturing plants) located on adjacent properties (except as reported in Comments below). |
| | There are apparent signs of USTs existing now or in the past on the subject property. It is recommended that an inspection by a qualified UST inspector be obtained to determine the location of any USTs together with their condition an proper registration if they are active, and if they are inactive, to determine whether they were deactivated in accordance with sound industry practices. |
| X | The value estimated in this appraisal is based on the assumption that any functioning USTs are not leaking and are properly registered and that any abandoned USTs are free from contamination and were properly drained, filled and sealed. |

Comments _____

## NEARBY HAZARDOUS WASTE SITES

| X | There are no apparent Hazardous Waste Sites on the subject property or nearby the subject property (except as reported in Comments below). Hazardous Waste Site search by a trained environmental engineer may determine that there is one or more Hazardous Waste Sites on or in the area of the subject property. |
| X | The value estimated in this appraisal is based on the assumption there there are no Hazardous Waste Sites on or nearby the subject property that negatively affect the value or safety of the property. |

Comments _____

## UREA FORMALDEHYDE (UFFI) INSULATION

| | All or part of the improvements were constructed before 1982 when UREA foam insulation was a common building material. The only way to be certain that the property is free of UREA formaldehyde is to have it inspected by a qualified UREA formaldehyde inspector. |
| X | The improvements were constructed after 1982. No apparent UREA formaldehyde materials were observed (except as reported in Comments below). |
| X | The value estimated in this appraisal is based on the assumption there there is no significant UFFI insulation or other UREA formaldehyde material on the property. |

Comments _____

## LEAD PAINT

| | All or part of of the improvements were constructed before 1980 when Lead Paint was a common building material. There is no apparent visible or known documented evidence of peeling or flaking Lead Paint on the floors, walls or ceilings (except as reported in Comments below). The only way to be certain that the property is free of surface or subsurface Lead Paint is to have it inspected by a qualified inspector. |
| X | The improvements were constructed after 1980. No apparent Lead Paint was observed (except as reported in Comments below). |
| X | The value estimated in this appraisal is based on the assumption that there is no flaking or peeling Lead Paint on the property. |

Comments _____

## AIR POLLUTION

| X | There are no apparent signs of Air Pollution at the time of the inspection nor were any reported (except as reported in Comments below). The only way to be certain that the air is free of pollution is to have it tested. |
| X | The value estimated in this appraisal is based on the assumption that the property is free of Air Pollution. |

Comments _____

## WETLANDS/FLOOD PLAINS

| X | The site does not contain any apparent Wetlands/Flood Plains (except as reported in Comments below). The only way to be certain that the site is free of Wetlands/Flood Plains is to have it inspected by a qualified environmental professional. |
| X | The value estimated in this appraisal is based on the assumption that there are no Wetlands/Flood Plains on the property (except as report in Comments below). |

Comments  Please see FEMA flood map for further information. _____

## MISCELLANEOUS ENVIRONMENTAL HAZARDS

| X | There are no other apparent miscellaneous hazardous substances and/or detrimental environmental conditions on or in the area of the site except as indicated below. |

| | Excess Noise _____ |
| | Radiation/Electromagnetic Radiation _____ |
| | Light Pollution _____ |
| | Waste Heat _____ |
| | Acid Mine Drainage _____ |
| | Agricultural Pollution _____ |
| | Geological Hazards _____ |
| | Nearby Hazardous Property _____ |
| | Infectious Medical Wastes _____ |
| | Pesticides _____ |
| | Others (Chemical Storage/Storage Drums, Pipelines, etc.) _____ |

| X | The value estimated in this appraisal is based on the assumption that there are no Miscellaneous environmental Hazards (except those reported above) that would negatively affect the value of the property. |

*When any of the environmental assumptions made in this addendum
are not correct, the estimate value in this appraisal may not be valid.*

05765557

24046

# State of Tennessee

TENNESSEE REAL ESTATE APPRAISER COMMISSION

CERTIFIED RESIDENTIAL REAL ESTATE APPRAISER

JOSEPH M RAMIREZ III

*This is to certify that all requirements of the State of Tennessee have been met.*

ID NUMBER: 00001848
LIC STATUS: ACTIVE
EXPIRATION DATE: 06/05/2015

IN-1313
DEPARTMENT OF
COMMERCE AND INSURANCE